15 F.3d 1093
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Visano D. NELSON, Defendant-Appellant.
 No. 93-30013.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 31, 1994.*
Feb. 7, 1994.
 
 1
 Before: GOODWIN, SCHROEDER, and NORRIS, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Visano D. Nelson appeals his jury convictions for conspiracy in violation of 18 U.S.C. Sec. 371, armed robbery in violation of 18 U.S.C. Sec. 2113(a) & (d), and using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. Sec. 924(c). We reject appellant's arguments and affirm the convictions.
 
 
 4
 * Appellant first challenges his conviction under Sec. 924(c) for using a firearm in relation to a violent crime. He does not dispute that he participated in the bank robbery with his co-conspirators, Michael Lee Williams (Williams), Marvin Nelson (Marvin), and Mario Vickers (Vickers), or that Williams brandished a firearm during the robbery. Instead, appellant contends that his participation in the conspiracy was so attenuated that the Sec. 924(c) conviction violates his due process rights and that the evidence was insufficient to support his conviction under Sec. 924(c).
 
 A. Due Process
 
 5
 Appellant first argues that his conviction under a Pinkerton theory of vicarious liability violates due process in light of his tangential role in the conspiracy and the district court's finding for sentencing purposes that his role in the offense fell somewhere between minimal and minor.
 
 
 6
 A defendant can be convicted of violating Sec. 924(c) under a conspiracy theory if the firearm crimes are committed in furtherance of the conspiracy and they are a reasonably foreseeable consequence of the conspiracy agreement. United States v. Castaneda, 9 F.3d 761, 765, 768 (9th Cir.1993) (citing Pinkerton v. United States, 328 U.S. 640 (1946)); United States v. Johnson, 886 F.2d 1120, 1123 (9th Cir.1989) (same). However, our circuit recognizes that due process constrains the application of Pinkerton liability where the relationship between the defendant and the substantive offense is attenuated:
 
 
 7
 Where a defendant has little or no connection to the predicate [violent] offense, another conspirator's use of a firearm may, in some fact situations, be unforeseeable. In those cases, it would violate due process to find that defendant vicariously liable for the firearm's use under Sec. 924(c).
 
 
 8
 Castameda. 9 F.3d at 767; see also Johnson, 886 F.2d at 1123.
 
 
 9
 We agree with the government that the relationship between appellant and the underlying robbery offense (including the use of the gun) was far from attenuated. We so hold despite the district court's decision to adjust appellant's sentence downward three levels after finding that his role in the offense was greater than "minimal" (warranting a four-level reduction under U.S.S.G. Sec. 3B1.2(a)) and "minor" (warranting a two-level reduction under U.S.S.G. Sec. 3B1.2(b)).
 
 
 10
 Although appellant's involvement may have been relatively minor for sentencing purposes, he was not a peripheral participant in a sprawling, large-scale conspiracy. Here, the conspiracy had only four members, and there was evidence that appellant knew of, and helped develop, the details of the robbery, including obtaining a handgun. Only two-and-a-half hours before the robbery, appellant accompanied Williams to a restaurant to pick up a .44 magnum from Williams' cousin. Willaims handed the gun to appellant, who placed it under the passenger seat of Williams' Camaro, a car the group planned to use in the robbery. Appellant then followed Williams and Marvin, who were driving the Camaro, in appellant's grandmother's BMW as the group cased out two banks before deciding to rob a third. Appellant drove the getaway car (the BMW), and was in the car when Marvin passed the gun wrapped in a bundle of clothes forward to Vickers with instructions to dispose of it. Finally, appellant received at least $1,200 of the $8,000 stolen from the bank. In light of this evidence of appellant's involvement in the conspiracy, we hold that appellant's relationship to the conspiracy was not so slight that his conviction under Sec. 924(c) violated his due process rights.[1]
 
 B. Sufficiency of the Evidence
 
 11
 When reviewing whether sufficient evidence exists to support a conviction, we must determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found [the appellant] guilty beyond a reasonable doubt on each essential element of the crime charged." Johnson, 886 F.2d at 1124. Appellant argues, however, that the evidence cannot support a conclusion that he knew of, or could reasonably have foreseen, Williams' use of the firearm during the robbery. We do not agree.
 
 
 12
 While it is true that appellant did not actually witness Williams brandishing the gun inside the bank, the evidence developed at trial, see pp. 3-4 supra, easily supports the inference that appellant knew, or could have reasonably foreseen, that a firearm would be used by a co-conspirator during the robbery.
 
 II
 
 13
 Appellant next argues that the district court abused its discretion by admitting evidence relating to appellant's violation of his pre-trial release order and his subsequent re-arrest. We employ a four step analysis in determining the probative value of flight evidence:
 
 
 14
 [The degree of probative value] depends on the confidence with which four inferences can be drawn:
 
 
 15
 (1) from the defendant's behavior to flight;
 
 
 16
 (2) from flight to consciousness of guilt;
 
 
 17
 (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and
 
 
 18
 (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.
 
 
 19
 United States v. Felix-Gutierrez, 940 F.2d 1200, 1207 (9th Cir.1991).
 
 A. Violation of Release Order
 
 20
 First, appellant challenges admission of evidence that he violated the conditions of his pre-trial release by leaving his grandmother, who was acting as his third-party custodian, and by failing to report to the pre-trial service office. Appellant contends that he fled from his grandmother's home because he feared she would lose her foster parent license if he remained there. Appellant argues that because of this innocent explanation, his disappearance does not satisfy prong two of the Felix-Gutierrez test because it could have manifested a desire to protect his grandmother.
 
 
 21
 We cannot say that the district court abused its discretion by admitting this evidence as probative. First, appellant never offered a contemporaneous explanation for his flight. In addition, the explanation does not account for his failure to apprise his pre-trial service officer of his whereabouts after he fled. Finally, appellant's explanation affected the weight of the evidence rather than its admissibility. The district court properly instructed the jury that they could consider his explanation in assessing the probative value of his flight.
 
 B. The Re-Arrest
 
 22
 Appellant also argues that the district court improperly admitted evidence that he attempted to avoid arrest after his flight. Appellant was in possession of a "crack" pipe at the time of his re-arrest. He therefore contends that his evasive actions were just as likely to support an inference of consciousness of guilt, and actual guilt, of possessing a crack pipe as an inference of consciousness of guilt, and actual guilt, of the crime charged in the indictment (prongs three and four of Felix-Gutierrez ).
 
 
 23
 However, appellant's attempts to provide police with a false name and social security number suggest that he believed the police were stopping him because he had jumped bail. And his attempts to flee from police and his physical resistance when caught suggest consciousness of guilt of the serious felonies in the indictment rather than the relatively minor charge of possessing drug paraphernalia. Finally, the district court instructed the jury that it could consider his "innocent" explanation of the evidence surrounding his re-arrest when assessing the probative value of this incident. Accordingly, we hold that the district court acted within its discretion by admitting this evidence.
 
 III
 
 24
 Appellant's final argument is that plain error occurred when an officer testified erroneously that appellant was "a suspect in several robberies." Appellant's Br. at 26. Appellant argues that the prejudicial nature of the officer's testimony was compounded by the officer's continued presence in the courtroom as a security guard.
 
 
 25
 We hold that the officer's statement did not constitute plain error requiring reversal of appellant's convictions. The officer's suggestion that Williams and appellant were suspects in other bank robberies was brief and isolated. The testimony was solicited by appellant's counsel despite the court's cautionary inquiry whether defense counsel really "want[ed] to get into this." Appellee's Br. at 21. In any event, the evidence of appellant's guilt, much of which was supplied by the testimony of his three co-conspirators, was overwhelming.
 
 
 26
 The convictions are AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Castaneda appears to be the only case in any circuit to find the relationship between a defendant and another conspirator's use of a firearm so remote that due process required reversal of a Sec. 924(c) conviction. 9 F.3d at 766-68. However, the facts of Castaneda are distinguishable. In that case, the defendant's role in the conspiracy was far more attenuated than appellant's here. The only evidence linking the defendant in Castaneda with the large drug distribution conspiracy was her marriage to one of the principals and the fact that she had several telephone conversations with various conspirators, which the court found to be unrelated to the activities of the conspiracy. Id. at 768